**In the Matter of CODESCO, INC., Debtor.**

**Bankruptcy No. 80–B–20283.**

United States Bankruptcy Court, S. D. New York.

Nov. 19, 1981.

See also, Bkrtcy., 15 B.R. 351.

Wexler, Weisman, Forman & Shapiro, P. C., Philadelphia, Pa., for IU.

Anderson Russell Kill & Olick, P. C., New York City, for Unsecured Creditors' Committee.

Eisen & Fishman, Levin & Weintraub, New York City, for debtor.

Ernst & Whinney, Accountants for Committee.

DECISION ON MOTION OF IU NORTH AMERICA, INC. TO SUSPEND AND DEFER ALL APPLICATIONS FOR COMPENSATION AND DISBURSEMENTS.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

IU North America, Inc. (IU), a creditor with a claim purporting to be secured by all of the debtor's assets, opposes the applications for interim compensation and disbursements filed on behalf of the attorneys and accountants for the creditors' committee. IU seeks to defer these applications until such time as there may be assets of the estate available to award interim allowances. The applicants have received no payment for services rendered to the creditors' committee from the inception of their retention to date.

When the debtor filed its petition under Chapter 11 of the Bankruptcy Code on July 27, 1980, it was then in the business of distribution of dental products and also operated dental laboratories manufacturing fixed and removable prosthetics. As a result of sales that were negotiated prior to and after the filing of the Chapter 11 petition, the debtor has closed or sold all of its

distribution and laboratory facilities and has divested itself of its business operations and assets. Management of the debtor at the inception of this case had acquired the debtor's business and assets as a result of a leveraged buy-out on October 9, 1979, from IU, the latter having taken back a note for a substantial portion of the purchase price, which was collateralized by a second security interest on the accounts receivable. The acquisition was financed by Citicorp Industrial Credit Corp. (Citicorp), who received a first security interest in old and new accounts receivable and a second security interest on inventory. The combined estimated purchase price approximated $34 million. Citicorp's secured interest has since been paid out, with the result that IU claims all of the assets of the debtor-in-possession under the umbrella of its security interests.

Counsel for the committee investigated the particulars of the leveraged buy-out transaction and reported their findings to the committee. Thereafter, when IU commenced an adversary proceeding under Code § 362 to lift the automatic stay, the creditors' committee counterclaimed with a challenge to IU's security claim bottomed on the theories of fraud and the subordination of IU's claim. Counsel for the creditors' committee also sought leave from this court for approval to bring a suit by the creditors' committee in the debtor's name against IU, which suit would be funded by the committee. Thereafter IU offered to settle the question concerning its security by leaving free assets in the estate totalling approximately $2 million for priority and administrative claims and approximately $2.25 million for unsecured creditors. The creditors' committee rejected this offer as insufficient. Counsel for the committee sought to have its application to commence the proposed lawsuit granted. The court denied the creditors' committee's request for leave to sue IU in the debtor's name. Instead, the court granted the committee's request for the appointment of an examiner who was to report back all of the details with respect to the leveraged buy-out transaction. The examiner's report revealed sufficient information to cause the court to conclude that the proposed settlement should not be accepted over the objections of the creditors' committee. However, the debtor-in-possession was free to include this settlement in a plan of arrangement, subject to obtaining the requisite creditor consent under Code § 1126.

No plan of reorganization has yet been filed and the creditors' committee has filed an application for an order converting the case to Chapter 7 pursuant to Code § 1112(b), returnable on January 7, 1982.

The applicants' requests for interim compensation must be treated in the context of the foregoing activities in this case. There is no question that they have performed substantial legal and accounting services since their retention. Code § 330 prescribes the standards under which the amount of compensation is to be determined for professional persons employed under Code §§ 327 or 1103. Such compensation is described as an administration expense under Code § 503(b)(2) and is accorded a first priority under Code § 507(a)(1). However, what is involved here is not a determination of final compensation after all of the dimensions of this case are known. The attorneys and accountants for the creditors' committee seek discretionary interim allowances and reimbursement authorized under Code § 331.

If this case were converted to Chapter 7, as requested by the creditors' committee, the administrative expenses of the aborted Chapter 11 case would be subordinated pursuant to Code § 726(b) to the super-priority administrative expenses of liquidation in the superseding Chapter 7 case. To award counsel and accountants for the creditors' committee an interim allowance which would have to be refunded in the event of a Chapter 7 liquidation would be sheer folly.

There exists a more fundamental reason why it is inappropriate to award any interim compensation to the attorneys and accountants for the creditors' committee. If the services performed by these professionals were incurred in the preservation or

disposition of the secured assets which benefitted IU as the secured claimant, compensation would be appropriate under Code § 506(c). However, the applicants do not, nor could they, contend that their services benefitted IU when in fact a substantial portion of the services related to challenging IU's secured claim. Unless and until IU's claim is rebutted it must be treated as allowed, in accordance with the prima facie vitality accorded such filed claim under Code § 502(a). Therefore, at this point there are no unencumbered assets in this estate to pay interim allowances to the attorneys and accountants for the creditors' committee. Any sums which could be used to pay interim allowances to the applicants would necessarily have to be taken from the security interest. Manifestly, IU should not be required to fund expenses of the creditors' committee challenging the validity of its liens and security interest.

There are insufficient funds in this estate to pay interim allowances to the attorneys and accountants for the creditors' committee. Therefore IU's motion to defer such payments is granted and the applications for such interim allowances are denied, without prejudice to renewal at a time when there are unencumbered funds available for payment.

IT IS SO ORDERED.