In re COMMERCIAL CONSORTIUM OF CALIFORNIA, Debtor.

Bankruptcy No. LA86–10794.

United States Bankruptcy Court, C.D. California.

Oct. 22, 1991.

Robinson, Diamant, Brill & Klausner, Los Angeles, Cal., for Chapter 7 Trustee.

John Tobin, Office of U.S. Trustee, Los Angeles, Cal., U.S. Trustee.

## OPINION RE AWARD OF INTERIM COMPENSATION TO ATTORNEYS FOR TRUSTEE

LISA HILL FENNING, Bankruptcy Judge.

Robinson, Diamant, Brill & Klausner (the "Firm"), court-appointed counsel for the chapter 7 trustee, has applied for an interim payment of attorney fees accrued during the first four years of this case. The amount requested reflects current billing rates, rather than the billing rates in effect at the time the services were rendered. The United States Trustee objects to the use of current billing rates as an unwarranted fee enhancement in violation of the "lodestar" standards governing fee awards. This Court holds that the use of current, rather than historical, billing rates is an appropriate way to compensate professionals for unavoidable delays in the awarding of interim or final fees in bankruptcy cases.

## BACKGROUND

This case commenced in June 1986 with the filing of an involuntary chapter 7 petition against Commercial Consortium of California (the "Debtor"). After entry of an order of relief, the chapter 7 trustee retained the Firm as general counsel. At that time, the estate lacked any cash or other readily available assets from which to pay a retainer or, indeed, any administrative expenses. Any payment would be contingent upon the Firm's ability to bring assets back into the estate.

The Firm's principal assignment was to seek recovery on a disputed claim under a fire insurance policy. At the time of the fire, the debtor was insured by Mission American Insurance Company. Before the involuntary bankruptcy petition was filed, the debtor supposedly negotiated a tentative oral settlement for $250,000.00 with that company. Before any settlement was formally documented, the insurance company went into receivership. Its successor, National American Insurance Company, refused to acknowledge the settlement and contested the claim. The chapter 7 trustee retained the Firm to handle the litigation with the successor insurance company and other parties who asserted a security interest in any insurance proceeds. An adversary complaint was filed in May 1989. After discovery, the Firm negotiated a settlement with National that resulted in the payment to the chapter 7 trustee of $273,000.00 after court approval of the compromise in April 1990.

The Firm seeks payment of interim fees from date of appointment through May 1990, now that the estate is liquid as a

result of the Firm's successful efforts. It is undisputed that the services described in the application qualify as "actual, necessary services" within the meaning of 11 U.S.C. § 330 and that they produced a beneficial result for the estate. But for the success of the action against the insurer, the estate would be totally without funds to pay the Firm or to make any distribution to creditors.

This case was an involuntary filing in which the principals of the Debtor have not cooperated. Thus, the case probably cannot be closed for at least another year or more, due to the investigations necessary to make up for the lack of schedules, statement of affairs, or adequate books and records from which the assets and creditors can be identified. The Firm requests that an interim payment be authorized, rather than further delaying payment until the final hearing before closing the case.

Although all creditors and interested parties were given proper notice of the interim fee hearing, only the United States Trustee filed an objection to the fees. The objection is limited to the issue of whether the Firm's request for payment at current market rates is proper. The United States Trustee does *not* dispute that the Firm's application contains sufficient evidence of the time expended by the Firm's attorneys and paralegals, the nature of the Firm's services, and their value to the estate. The Firm fully complied with the descriptive and documentation requirements of F.R.B.P. Rule 2016(a) and Local Bankruptcy Rule 141(3).

The Firm's contentions on the following issues are undisputed. Therefore, the Court did not require supplemental evidence but rather accepted the Firm's representations as to the reasonableness of the rates and charges. Accordingly, for purposes of this application, the Court finds that: (1) the hourly rates of the individual attorneys and paralegals were and are the Firm's normal rates; (2) those rates were and are appropriate market rates for the years in question, based upon the various levels of experience and the nature of the tasks performed; (3) in setting these customary rates, the Firm does not take into account delays in payment beyond the typical 120–day intervals for interim fee applications in chapter 11 cases, or monthly or quarterly statements to a private client; and (4) the Firm, like others engaged in bankruptcy practice in this district, bills the same insolvency rates for all clients, whether the attorney fees are to be paid from a bankruptcy estate or by creditors or other clients whose assets are not subject to the Court's jurisdiction.

These representations are consistent with the billing rates and practices reflected in the hundreds of attorney fee applications filed with and reviewed by this Court in the past five and a half years.

Multiplying the hours expended by the regular billing rates in effect at the time the services were rendered ("historical rates") yields total fees of $24,408.00. The Firm has requested an award of fees in the sum of $27,612.00, based on its 1990 billing rates ("current rates"). The United States Trustee argues that the difference of $3,204.00 represents an unjustified premium, which would give the Firm a windfall as a result of raising its rates during the years before it applied for interim fees.

The record contains no evidence that the disputed claim could have been resolved more quickly than it was, compelling the finding that the Firm's long delay in applying for fees was unavoidable. Any earlier filing of a fee application would have been pointless and wasteful, for the trustee could not have paid any allowed fees before recovery on the claim.

ISSUES PRESENTED

1. Is an interim fee award appropriate in chapter 7 cases, or should trustees and professionals be required to await a final fee hearing and the closing of the case?

2. Are professionals in bankruptcy cases entitled to fee enhancements as compensation for delays in payment of their fees?

DISCUSSION

█ Sometimes Congressional intent regarding the bankruptcy laws of this country is clear. This is one of those occasions.

In enacting the professional compensation provisions of the Bankruptcy Code (11 U.S.C. § 326 *et seq.*), Congress expressly rejected the "economy of administration" principle that had guided fee awards under the Bankruptcy Act. Professionals in bankruptcy cases are entitled to be paid on a comparable basis to other privately retained counsel, both in terms of timeliness and amount of payment. *In re Manoa Finance Co., Inc.*, 853 F.2d 687, 690 (9th Cir.1988); *In re Nucorp Energy, Inc.*, 764 F.2d 655, 658–59 (9th Cir.1985); *In re Powerine Oil Co.*, 71 B.R. 767, 770 (9th Cir.BAP 1986).

Before the adoption of the Bankruptcy Code, attorneys had to wait until the end of the case before getting paid, and were usually paid at lower rates than for corresponding non-bankruptcy representation. *See In re THC Financial Corp.*, 659 F.2d 951, 955 n. 2 (9th Cir.1981), *cert. den.*, 456 U.S. 977, 102 S.Ct. 2244, 72 L.Ed.2d 852 (1982) (stating the pre-Code rule). The efforts of Congress to bring compensation in line with other areas of practice have only been partially successful. Inequities in compensation persist. A recent comprehensive study by the American Bankruptcy Institute documents that the still-pervasive result is fees being awarded at lower rates in bankruptcy cases, than in other comparable areas of practice. *ABI National Report on Professional Compensation in Bankruptcy Cases* (Washington, D.C.: ABI, 1991).

Among the factors tending to depress bankruptcy fees are delays in payment and the lack of compensation for such delays, the two central issues in this case.

## I. Chapter 7 Professionals Are Entitled to Apply for Interim Fees

### A. Section 331 Applies in Chapter 7 Cases.

■ Under the Code, trustees, examiners and other professionals who have been retained under Section 327 at the estate's expense are generally permitted by Section 331 to apply for interim compensation during the case. Section 331 provides:

"A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement."

The essential purpose of this section is to relieve counsel and other professionals of the burden of "financing" lengthy bankruptcy proceedings. *In re Evangeline Refining Co.*, 890 F.2d 1312 (5th Cir.1989); *In re Knudsen Corp.*, 84 B.R. 668, 672 (9th Cir.BAP 1988); *In re Mansfield Tire & Rubber Co.*, 19 B.R. 125, 127 (Bankr. N.D.Ohio 1981); 2 *Collier on Bankruptcy* 331.02, pp. 331–6 to 331–9, and n. 5 (15th Ed. 1991).

As part of chapter 3 of the Code, this provision relating to the retention and payment of professionals applies in all cases. 11 U.S.C. § 103(a). By its terms, Section 331 contemplates that progress payments can be requested in any case, whether filed under chapter 7, 11 or some other chapter. This section does *not* say, "except in chapter 7 cases, where the professional must wait until the end of the case to receive any payment."

The provision for hearings every 120 days was intended to—and did—put bankruptcy counsel on essentially the same payment schedule as other lawyers. In 1978, when the Code was enacted, attorneys customarily billed their clients on a quarterly basis. Times have changed. Lawyers now run their practices in a more business-like fashion. Computerization has simplified and speeded the billing process. As widely documented in the legal press, the billing cycle has shifted to monthly statements. The 120–day provision of Section 331, intended to be a help to lawyers in 1978, has become a straight-jacket for the lawyers of the '90s. Thus, even payments every 120

days no longer compensate bankruptcy attorneys on a fully equivalent basis with their non-bankruptcy colleagues.

A variety of ingenious escape methods have been devised, including guidelines for monthly drawdowns on prepetition retainers, that rely on the judge's statutory discretion to allow more frequent hearings. *See, e.g.,* Guidelines 6, 7, and 18 of *Guidelines for Fulfilling the Requirements of the United States Trustee,* Office of the United States Trustee, Region 16, Central District of California (1990); (allowing monthly drawdowns from retainers held in client trust accounts, subject to procedural and other restrictions). More frequent payments are most commonly authorized in large cases involving extensive legal work. *See, e.g., In re Knudsen Corp., supra,* 84 B.R. at 672. The proliferation of methods designed to get around the statutory limits signals the need for Congress to revise the statute to bring it back into harmony with the reality of contemporary lawyer billing and payment systems.

*Knudsen* and the U.S. Trustee Guidelines address interim fees problems in the chapter 11 setting, where the issue is whether the attorneys should be paid *more* often than quarterly. Here the threshhold question is whether chapter 7 counsel should be paid on an interim basis at all. Some bankruptcy judges, including some in this district, as a matter of policy have refused to hear interim fee applications in chapter 7 cases. They point to the discretionary language of "may allow," arguing that the court is not *required* to grant such fees. These judges—and others—disfavor interim chapter 7 applications on the theory that requiring counsel to wait until the case is completed encourages counsel to press for more rapid closing. *See, e.g., In re Domino Investments, Ltd.,* 82 B.R. 608 (Bankr.S.D.Fla.1988).

This approach assumes that counsel can control the speed with which chapter 7 cases are closed. It also assumes that the administration of chapter 7 cases can usually be completed rapidly enough that interim applications are an unnecessary expense. While true to an extent, these assumptions do not justify total preclusion of interim applications.

A recent statistical study by the Research and Development Department of the Bankruptcy Clerk's office for this district showed that, *on average,* "asset" chapter 7 cases (which constitute less than 1% of the district's chapter 7 caseload) are currently being closed *seven and one half years* after filing. Some cases have been pending as much as 11 to 12 years before closing. Many "asset" chapter 7 cases, of course, began as chapter 11 cases, further blurring any potential distinction in interim fee policies between the two chapters.

By contrast, according to the 1990 Case Processing Measures compiled by the Administrative Office of the United States Courts, the Central District closes most "no asset" cases—99% of the chapter 7 caseload—within 12 months of filing, with the median disposition time being approximately 5.5 months (slightly shorter than the national average). While these closings qualify as prompt, attorney fees are simply not collectible in "no asset" cases.

A blanket refusal to hear chapter 7 interim fee applications does not comport with either the express statutory authorization in Section 331 or the legislative intent underlying Section 331. Chapter 7 counsel face the prospect of years, not months, without payment, if they are required to wait until the case is ready for closing before they get paid.

B. Interim Chapter 7 Fees are Appropriate Where Funds are Available and Closing is not Imminent.

 An interim application under Section 331 is a reasonable response by counsel to the delays currently inherent in the bankruptcy process. *See, e.g., In re Peoples Savings & Investment, Inc.,* 103 B.R. 264 (Bankr.E.D.Okla.1989) (interim fees awarded to chapter 7 counsel for two years of work). The appropriateness of the allowance and payment of fees on an interim basis in any particular case will depend on several factors:

1. The current availability of funds from which fees can be disbursed;

2. The existence and amount of other accrued administrative obligations of the same or higher priority that might exhaust available funds;

3. The continuing need for funds to pay the necessary administrative expenses likely to be incurred in completing the administration of the case; and

4. Inability to file a final fee application in the near future.

Each of these factors must be evaluated in light of all the circumstances of each case. The burden lies with the professional seeking payment to furnish sufficient evidence to satisfy the court that it is prudent to allow the disbursement of estate funds for interim fees.

These factors are not unique to chapter 7 cases. The decision to authorize payment of interim fees in any given chapter 11 case similarly depends upon evaluation of the financial condition of the estate and its administrative solvency. *See, e.g., In re Nana Daly's Pub, Ltd.*, 67 B.R. 782, 787 (Bankr.E.D.N.Y.1986) (ability of chapter 11 debtor to pay interim attorney's fees is a major factor in deciding whether to allow interim compensation); *In re Codesco, Inc.*, 15 B.R. 354, 356 (Bankr.S.D.N.Y.1981) (denial of interim chapter 11 fees for creditors' committee counsel based primarily upon lack of unencumbered funds from which fees could be paid).

That is why Local Bankruptcy Rule 141 requires any applicant for interim fees to provide evidence of the current financial condition of the estate. That rule also requires an applicant to give advance notice to other professionals entitled to seek fees, so that their applications can be filed and set for hearing at the same time. The court is thus assured of a relatively complete picture of the current administrative obligations of the estate, in determining whether to allow payment of interim fees.

Allowance of interim fees in chapter 7 cases is arguably more problematic than in most chapter 11 cases. Unlike an operating chapter 11 reorganization case, potential new value is not being generated from use of the estate's assets. Rather, the chapter 7 administrative fees must be paid from a fixed pool of assets (albeit often of uncertain value). On the other hand, most chapter 11 cases do not result in a consummated plan, but rather are ultimately converted to chapter 7 or dismissed.

In light of these considerations, the professional must evaluate whether an interim fee application is appropriate. Generally, the cost of the fee application process is compensable in this Circuit. *In re Nucorp Energy, Inc., supra,* 764 F.2d 655 (9th Cir. 1985). But there is an inherent risk in filing an inappropriate interim application: the court may disallow as unreasonable and unnecessary any fees related to the fee application, if it determines that no interim payment is possible and that fixing the amount of allowable fees serves no useful purpose. For example, if a chapter 7 estate lacks any available cash from which to pay interim fees, then the reasonableness of the professional's fees generated in preparing, noticing and appearing on an interim application would be seriously in doubt. *Nucorp* only authorizes compensation for appropriate services regarding fee applications, not a guarantee of all fees relating to such applications. *See In re Riverside–Linden Investment Co.*, 945 F.2d 320 (9th Cir.1991) (affirming denial of fees for unsuccessful litigation of objections to application).

■ This Court concludes that the Code expressly authorizes both interim fee applications and interim payments to attorneys for chapter 7 trustees. In this case, the attorneys for the trustee properly waited until funds had been recovered by the estate from which they could be paid, before filing their interim application. The evidence before this Court shows that adequate funds will still be available to the trustee to pay all presently known and anticipated administrative claims of the same priority. It is extremely unlikely that any recoupment would be necessary to achieve *pro rata* administrative distributions. Given the prospect of substantial further delays in closing the case for reasons beyond applicant's control, it would be inequitable to force counsel to wait until the administration of the case is complete

before being paid. Thus, interim payment in this case is appropriate.

## II. Compensation for Unavoidable Delays in Allowance of Fees

■ Almost three years passed from the date the Firm was retained before the fund was created from which interim fees could be paid in this case. The Firm argues that it should be compensated for that unavoidable delay, especially given the risk that it would not be paid at all if the litigation was unsuccessful. The Firm seeks fees at current rates, rather than the historical rates. The United States Trustee objects that this approach constitutes an unwarranted fee enhancement.

### A. Use of "Current Rates" as Compensation for Delay

In general, the standard for determining the appropriate amount for attorney fees in bankruptcy cases is the "lodestar" approach, also used in determining fees under other federal feeshifting statutes. Under this approach, the amount of the fee award is calculated by multiplying the number of hours expended by the professionals by the regular billing rates in effect at the time the services were rendered. *In re Manoa Finance Co. Inc., supra,* 853 F.2d at 691. Bonuses may be appropriate, but only under exceptional circumstances. *Id.* at 688.

The issue here is not whether the firm's services were so extraordinary as to be deserving of a bonus for results. The firm's work was highly satisfactory and produced an excellent result for the estate, but probably could not be characterized as exceptional in the sense of justifying a bonus under the *Manoa Finance* standard. Rather the question is whether solid, competent work that produces good results deserves to be paid at a rate that takes into account the time value of money, when the payment is substantially delayed.

Compensation for delay in payment has *not* been held to a strict standard of exceptional circumstances, either in or out of bankruptcy. Instead, it is generally recognized that delays in payment burden professionals. As the United States Supreme Court noted in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 716, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), a case arising under the Clean Air Act:

"In setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value."

*See, e.g., In re Lawler,* 807 F.2d 1207, 1212 (5th Cir.1987) (holding that use of current rates to compensate for delay was within bankruptcy court's discretion in Chapter XI case under the Bankruptcy Act); *Gaines v. Dougherty County Bd. of Educ.,* 775 F.2d 1565, 1572 n. 14 (11th Cir.1985) (where there is a delay in payment of fees in a civil rights case, the court should take into account the time value of money and the effects of inflation, and generally should award compensation at current rates rather than at historic rates).

More recently, the Supreme Court expressly held the use of current, rather than historical, rates to be an appropriate adjustment to lodestar rates to compensate for delays. In *Missouri v. Jenkins,* 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), such an adjustment was authorized in awarding fees under the Civil Rights Act:

"[C]ompensation received several years after services were rendered.... is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings." 491 U.S. at 283, 109 S.Ct. at 2469.

The Court went on to note that:

"This delay, coupled with the fact that, as we recognized in *Delaware Valley,* the attorney's *expenses* are not deferred pending completion of the litigation, can cause considerable hardship.... If no compensation were provided for the delay in payment, the prospect of such hardship could well deter otherwise willing attorneys from accepting complex civil rights cases that might offer great benefit to society at large; this result would work to defeat Congress' purpose

in enacting [42 U.S.C.] § 1988 of 'encourag[ing] the enforcement of federal law through lawsuits filed by private persons.' [citations omitted.]

"We note also that we have recognized the availability of interim fee awards under [42 U.S.C.] § 1988 when a litigant becomes as prevailing party on one issue in the course of the litigation. [citation omitted.] In economic terms, such an interim award does not differ from an enhancement for delay in payment." 491 U.S. at 283–284 n. 6, 109 S.Ct. at 2469 n. 6.

The same principles apply under the Bankruptcy Code. Congress intended to provide adequate compensation, on a par with that available in other areas of practice, to attract competent counsel to the bankruptcy specialty. Interim fee applications are supposed to help avoid undue delays in payment. When delay has nevertheless occurred, counsel should not have to bear the full brunt of the resulting financial impact. Therefore, this Court holds that use of current hourly rates should be permitted to compensate counsel for unavoidable delay in allowance of fees. *Accord: In re Fall*, 93 B.R. 1003, 1010 (Bankr.D.Ore.1988) (allowing fee enhancement in the form of retroactive adjustment to current rates for long-unpaid chapter 7 trustee's counsel who eventually recovered substantial assets for estate); *In re D.C. Sullivan & Co., Inc.*, 69 B.R. 212 (Bankr. D.Mass.1986) (awarding current rather than historical hourly rates in approving final fee application of counsel for chapter 7 trustee).

### B. Availability of Interest on Fees as Compensation for Delay

Another possible method for compensating professionals for the delay in payment of fees is by allowing interest. This method is, however, available in chapter 7 cases only as a means of compensating counsel for the delay in payment *after* the fee has been allowed, because Section 726(a)(5) limits interest to allowed claims, whether priority or otherwise. Section 726 provides in pertinent part:

"**Distribution of property of the estate**

"(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

"(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;

. . . . .

"(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection; ..."

As administrative expenses under Section 503(b), professional fees that have been allowed after notice and hearing are entitled to first priority under Section 507(a)(1). As the Ninth Circuit recently held in *In re Riverside–Linden Investment Co., supra*, 945 F.2d at 324:

"It is not until the fees have been awarded by the bankruptcy court pursuant to Section 330, therefore, that they become an administrative expense entitling them to treatment as a claim under Section 726(a)(5).... [We] hold that interest on claims of attorney's fees awarded under section 330(a) accrues from the date they are awarded."

This approach is consistent with the general principle that statutory or judgment interest only begins to accrue when the claim is fixed in amount, and no longer uncertain. *See, e.g.,* Cal.Civ.Code Section 3287 (allowing pre-judgment interest from date that claim arose for "damages certain," but generally only post-judgment interest on unliquidated claims); 28 U.S.C. § 1961 (providing for post-judgment interest in federal civil actions). *Cf. In re D.W.G.K. Restaurants*, 106 B.R. 194, 198 (Bankr.S.D.Cal. 1989) (awarding interest on unpaid, allowed attorney's fees in chapter 11 case); *In re Energy Cooperative, Inc.*, 95 B.R. 961, 966, 968 (Bankr.N.D.Ill.1988) (awarding interest on unpaid fees at U.S. Treasury Bill rate from date of order allowing fees).

Therefore, if this estate has assets sufficient to reach the fifth-level priority of distribution, the attorneys will be entitled to interest to compensate for any delays in the payment of their allowed fees.

CONCLUSION

Thus, compensation for unavoidable delay in allowance of fees in bankruptcy cases should be provided in the form of allowance at current, rather than historical, hourly rates. Interest on fees cannot effectively compensate for payment delay in chapter 7 cases, because it is only payable in surplus cases and only accrues after entry of an order allowing fees.

Establishing a clear rule permitting interim fee applications in chapter 7 cases should not unduly burden the court, nor unduly increase the expense of administration. Whether an interim application is appropriate depends upon the circumstances of the case. If the court determines the application is premature or unwarranted, then the professional will not be compensated for the cost of preparing and presenting it. Furthermore, the ability to request current rates in a final fee application, when the estate's uncertain ability to pay precludes an interim application, will reassure counsel that they will not bear the full cost of delay, if they wait until the end of the chapter 7 case.

This approach, therefore, more accurately reflects the Congressional intent in enacting Section 330 and 331. Professionals are not supposed to have to bear the hardship of financing the case, especially where delays in administration are not within their control.

This opinion itself was delayed due to the competing demands of the record-breaking levels of new bankruptcy filings in this district since argument. Therefore, counsel may submit a supplemental declaration updating the amounts due for fees based on the hourly rates in effect as of the date of this opinion. Counsel shall also submit an appropriate order forthwith.