In re GLADOS, INC., Debtor.

Donald F. WALTON, Acting United States Trustee, Appellant,

v.

Lawrence S. KLEINFELD, Trustee, et al., Appellees.

No. 93–1905–Civ–T–23.

United States District Court,
M.D. Florida,
Tampa Division.

May 5, 1995.

Jere M. Fishback, St. Petersburg, FL, for trustee.

Lawrence S. Kleinfeld, Trustee, St. Petersburg, FL.

Benjamin E. Lambers, Tampa, FL.

## MEMORANDUM OPINION

SCHLESINGER, District Judge.

This appeal presents the rare situation of a solvent debtor—an estate which contains a surplus of funds—and a dispute over the allocation of the surplus funds as interest on trustee and professional fees. Appellant, Donald F. Walton, Acting United States Trustee (the "UST") appeals from an order of the Bankruptcy Court Overruling United States Trustee's Objection to Trustee's Proposed Distribution, Allowing Administrative Expenses and Authorizing Chapter 7 Distribution. The parties to this appeal are (i) Appellant, the UST, (ii) Appellee Lawrence S. Kleinfeld, Chapter 7 Trustee (the "Trustee"), (iii) Appellee Lawrence S. Kleinfeld and Jere' M. Fishback, former partners of the law firm of Kleinfeld & Fishback (the "Trustee's Counsel") and (iv) Appellee the law firm of Stichter, Riedel, Blain & Prosser, P.A. (the "Debtor's Counsel"). The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).

### Factual Background

On September 30, 1983, Glados, Inc. (the "Debtor"), filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"). By order dated February 8, 1985, the case was converted to one under Chapter 7 of the Bankruptcy Code and Appellee Lawrence S. Kleinfeld was appointed as interim Chapter 7 Trustee. At the time of Trustee's appointment the Debtor had no assets other than two pending items of litigation, one of which was a claim in the United States District Court for the Middle District of Florida against the Debtor's insurance company to recover insurance proceeds after the Debtor's business was destroyed by fire (the "Insurance Action"). Trustee was substituted as plaintiff in the pending lawsuits and as a consequence, he sought to employ counsel. On September 9, 1985, the Bankruptcy Court approved Trustee's application to employ the law firm of Kleinfeld & Fishback as Trustee's Counsel on a contingency fee basis. After six years of litigation, Trustee's Counsel obtained favorable judgments in both lawsuits and secured substantial funds for the estate.

On May 15, 1986, Trustee's Counsel filed a motion in the District Court seeking an award of attorneys' fees for its trial level work in the Insurance Action. By order dated June 6, 1986, the District Court granted the motion and awarded Trustee's Counsel the sum of $79,200. Trustee's Counsel filed a second motion for attorneys' fees on March 14, 1988, for its efforts at the appellate level in the Insurance Action. On September 18, 1991, the Debtor's insurer paid the estate the amount of the District Court judgment plus the sum of $129,402.12, which represented the trial level fees plus accrued post-judgment interest. Trustee and Debtor's insurer compromised on a fee for the appellate work in the sum of $80,000, and on January 23, 1992, the Bankruptcy Court approved the compromise.

As part of the process of closing the Debtor's estate, on July 21, 1992, Trustee filed a Preliminary Report of Estate along with his application for compensation. Also on July 21, 1992, Trustee's Counsel filed its fee application which included a request for the fees awarded in the Insurance Action in addition to fees for other work performed on behalf of Trustee. The Bankruptcy Court then issued to all creditors and parties in interest a Notice of Preliminary Report of Estate Funds and Notice of Surplus Funds, which advised all creditors of the availability of surplus funds to pay additional claims, if filed. No additional claims were filed.

Thereafter, on September 29, 1992, Debtor's Counsel, filed its fee application. By Order dated February 16, 1993, the Bankruptcy Court deferred ruling on the fee applications until it was determined whether the estate would contain adequate funds for the payment of fees.

On February 25, 1993, the Bankruptcy Court communicated to Trustee the allowed amounts of all administrative expenses and with this information, Trustee prepared a proposed order allowing administrative expenses, authorizing disbursements and directing payment of dividends. The proposed order provided that after the payment of all claims in full, the estate would have surplus funds which would be used to pay interest on the fees of the Trustee, Trustee's Counsel and Debtor's Counsel pursuant to § 726(a)(5) of the Bankruptcy Code. UST objected to the proposed distribution based solely on the allocation of surplus funds for interest, and Billy Ray Addison, the largest unsecured creditor, joined in the UST's objection.

On September 30, 1993, after a hearing on the UST's objection, the Bankruptcy Court entered an Order: (i) allowing administrative fees and expenses to the Trustee, Trustee's Counsel and Debtor's Counsel, (ii) providing for the payment in full of all priority and unsecured claimants and (iii) allocating the remaining $77,711.82 of surplus funds as interest on the administrative fees and expenses.

In the September 30, 1993, Order, the Bankruptcy Court concluded that, under § 726(a)(5) of the Bankruptcy Code, interest on trustee fees accrues from the date the trustee is appointed and interest on professional fees accrues from the date the fee application is filed. The Bankruptcy Court further held that if other litigation caused the professional to file a fee application with another court, interest on such fees would accrue from the date the professional filed the fee application with the other court. The Bankruptcy Court applied the federal judgment rate of interest in effect on the date the Chapter 7 case was filed, or if the case was originally filed under another chapter, the interest rate on the date of conversion to Chapter 7. Accordingly, the Bankruptcy

Court awarded the sum of (i) $73,400.68 in interest to Trustee's Counsel, (ii) $4,008.42 in interest to Trustee, and (iii) $302.72 in interest to Debtor's Counsel, thus exhausting the surplus. The UST filed a timely notice of appeal from the Order.

### Standard of Review

■ The United States District Court functions as an appellate court in reviewing decisions of the Bankruptcy Court. *See In re Williamson*, 15 F.3d 1037, 1038 (11th Cir. 1994). Thus, while this Court reviews on a *de novo* basis the legal conclusions of the Bankruptcy Court, the Court must accept the Bankruptcy Court's findings of fact unless those findings are clearly erroneous. This appeal presents the legal question of when interest on professional and trustee fees begins to accrue under § 726(a)(5) of the Bankruptcy Code, and as such, the Court will conduct a *de novo* review.

### Discussion

The UST raises four points on appeal—the Bankruptcy Court erred by holding that (i) § 726(a)(5) entitles professionals to interest on their fees from the date the fee application is filed, (ii) § 726(a)(5) entitles a Chapter 7 trustee to interest on his or her fee from the date of the trustee's appointment, (iii) § 326(a) does not limit the amount of interest payable to a Chapter 7 trustee, and (iv) the legal rate of interest in a case converted from Chapter 11 to Chapter 7 is determined as of the date of conversion rather than the date the original petition was filed.

### Trustee and Professional Fees

■ To determine when interest under § 726(a)(5) on administrative expenses begins to accrue, this Court must review the relevant sections of the Bankruptcy Code which establish the order of distribution for property of the estate in Chapter 7 cases. Section 726 lists six categories of claims and provides that the higher category must be paid in full before any lower category is paid. Claims under § 726(a)(1)–(6) include: (1) claims specified in § 507 of the Bankruptcy Code; (2) allowed unsecured claims; (3) tardily filed proofs of claim; (4) fines and penalties; (5) interest on claims paid under

paragraphs (1)–(4); and (6) claims of the debtor. Section 726(a)(5) provides for:

[P]ayment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection. . . .

11 U.S.C. § 726(a)(5). Thus, any interest paid pursuant to § 726(a)(5) would be applied first to claims under § 726(a)(1). Section 726(a)(1) allows for the distribution of property of the estate in payment of the claims specified in § 507 of the Code.

Section 507(a)(1) gives first priority to payment of "administrative expenses allowed under section 503(b)." Section 503(b)(2) details the procedure for the allowance of administrative expenses and states:

(b) After notice and a hearing, there shall be allowed administrative expenses, . . . including (2) compensation and reimbursement awarded under section 330(a) of this title. . . .

11 U.S.C. § 503(b)(2). Section 330(a)(1) governs the compensation of officers and provides that:

After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328 and 329, the court may award to a trustee, an examiner, a professional person . . . reasonable compensation for actual, necessary services . . . and reimbursement for actual, necessary services.

11 U.S.C. § 330(a)(1).

■ By reading § 726(a)(5) in conjunction with §§ 507, 503(b) and 330(a), the Code provides for interest on trustee and professional fees and several courts have reached this conclusion. *See In re Riverside–Linden Inv. Co.*, 945 F.2d 320, 323 (9th Cir.1991); *In re Chiapetta*, 159 B.R. 152, 159 (Bankr. E.D.Pa.1993); *In re Commercial Consortium of California*, 135 B.R. 120, 127 (Bankr. C.D.Cal.1991); *In re Beck*, 128 B.R. 571, 573 (Bankr.E.D.Okla.1991).

A literal application of § 726(a)(5) would award interest from the "date of the filing of the petition." However, the courts cited above, as well as the Bankruptcy Court below conclude that accruing interest on administrative fees from the date of filing the

petition makes little sense because administrative claims do not exist as of the petition date. On the petition date professionals would have not yet been authorized under the Bankruptcy Code to represent either the trustee or the estate and they will not have incurred fees. Likewise, the trustee would not have been appointed. Since adhering to a literal reading of § 726(a)(5) appears illogical with respect to administrative fees, the courts have instead calculated the interest from the date the fees are "awarded"—essentially, the date of the order approving the fee application. *See Riverside*, 945 F.2d at 324; *Chiapetta*, 159 B.R. at 159; *Commercial Consortium*, 135 B.R. at 127. The UST contends that the Bankruptcy Court should have followed this approach.

UST argues that interest may only be applied to "allowed administrative expenses." Under § 503(b), "allowed administrative expenses" include compensation "awarded" under § 330(a). Until the fees are "awarded" under § 330(a), the UST contends, a trustee or the professionals have no right to payment because there is no "allowed administrative expense." Therefore, the UST concludes that interest only accrues once the Court awards the fees.

UST cites *Riverside*, a Ninth Circuit opinion, and the only Circuit Court to address this issue. *In re Riverside–Linden Inv. Co.*, 945 F.2d 320 (9th Cir.1991). In *Riverside*, a surplus case, the trustee's counsel sought an award of fees plus interest for the services it provided dating back some three years before the date the fee application was filed. *Id.* at 322. The trustee's counsel sought interest from the date the estate was invoiced for its services. *Id.* The Court denied the request for interest, claiming that it could not accrue until the fees were awarded.

The bankruptcy court's opinion in *Riverside* reveals the concern that if interest accrued from the date the estate was invoiced for fees, the trustee's counsel would be improperly rewarded for its delay in filing the fee application. *In re Riverside–Linden Inv. Co.*, 89 B.R. 848 (Bankr.S.D.Cal.1988).

Applicant offers no reason why an interim application was not sought at an earlier

date to preclude the accruing of the interest it now claims.... If the applicant had obtained an order approving the interim fees but was not paid, then interest ... could be awarded.... In this case, since the estate had cash, as early as September 1985, sufficient to pay all claims in full, another interim application should have been submitted by applicant.

*Id.* at 850. The Ninth Circuit ultimately affirmed, stating that a professional is not entitled to interest on an administrative fee until fees are "awarded under § 330." *Riverside,* 945 F.2d at 324.

■ *Riverside* and UST, however, sidestep an important point in the analysis—the definition of "claim." Under § 726(a)(5), interest is paid on *"any claim* under paragraph (1)" of that section. Section 101(5)(A) of the Bankruptcy Code, defines a "claim" as:

right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

11 U.S.C. § 101(5)(A). If the Court were to follow the reasoning of UST and of *Riverside,* even though the Trustee, the Trustee's Counsel and the Debtor's Counsel performed services for the estate, the fees that they earned would not become a "claim," as that term is used in § 726(a)(5), until the Court approves their fee applications. The term "claim" should not be so narrowly construed. In this Circuit, it is established that the term "claim" is to be given the broadest possible definition. *See In re St. Laurent,* 991 F.2d 672, 678 (11th Cir.1993). The drafters of the Bankruptcy Code clearly intended for administrative claimants to be eligible for interest under § 726(a)(5) and a broad reading of the term "claim" realizes their intent. To hold that administrative claimants do not possess a "claim" capable of accruing interest until it is liquidated by a court order approving fees would needlessly limit the meaning of the term "claim."

The cases which deny the accrual of interest prior to the fees being "awarded" also suggest that if interest accrued prior to the approval of the fee application, the applicants would delay in filing the applications. *See In re Byrd,* 151 B.R. 925, 928 (D.S.D.1993); *In re Caribou Partnership III,* 152 B.R. 733, 741 (Bankr.N.D.Ind.1993); *In re Motley,* 150 B.R. 16, 19 (Bankr.E.D.Va.1992); *Commercial Consortium,* 135 B.R. at 124; *Riverside,* 89 B.R. at 850. The applicants in the above-cited cases waited until late in the case to file their fee applications and the courts decided that allowing interest to accrue prior to the fee award would improperly compensate the applicants for their delay. All of these decisions indicate that the applicant could have sought and received interim compensation pursuant to § 331 of the Bankruptcy Code, thereby eliminating the need to accrue interest because the fees would be paid sooner. Implicit in these cases is the view that if interest accrues only after the fees are awarded, delays in filing fee applications would be discouraged and professionals would be encouraged to seek interim compensation.

While other jurisdictions may reason that accruing interest only after fees are awarded is justified where the applicant could have sought interim compensation and received payment of its fees much sooner, this reasoning does not apply in the present case. In this District, the Bankruptcy Court does not entertain interim fee applications in Chapter 7 cases due to its large caseload. Moreover, as a matter of policy, the Bankruptcy Court defers ruling on fee applications in Chapter 7 cases until the end of the case because as a practical matter, only then can it be determined whether the estate possesses sufficient funds to pay the claims. When the Trustee's Counsel sought fees in the Insurance Action the estate had no funds to pay any fees. When the Debtor's Counsel filed its fee application the Bankruptcy Court deferred ruling until a final accounting of the estate was made.

Another potential problem with accruing interest from the date of the award was raised at the hearing below. If several fee applications were filed by different professionals, and the Court was able to rule on one but not another due to administrative burdens, calculating interest from the date of the award would be extremely unfair to the party whose application was not ruled upon.

THE COURT: Suppose we have three determinations of fees and then the interest rate of one, interest rate of another, interest rate of another.

MS. BURNETTE [for UST]: At least it's fixed that there's an order entered.

THE COURT: Suppose there isn't an order entered. That person get [sic] penalized, right? That doesn't seem very equitable to me because the Court didn't rule on it.... What I'm saying is somebody doesn't get it [interest] because the administrative justice can't handle it [the fee applications]. But for the fact that they had been filed in the Southern District of Florida, the Court would have ruled on it quicker. That's what I find is extremely unjust and inequitable. People that come before the Court are shortcheated because of administrative justice, not because of what they do. That I find is phenomenally inequitable.

Tr. pp. 45–46.

The Court finds that Trustee is entitled to interest under § 726(a)(5) from the date of his appointment. Section 726(a)(5) includes Trustee, and at the time of Trustee's appointment he had an unliquidated claim. The Bankruptcy Court's ruling in this regard comports with this analysis. Any concern about the Trustee improperly delaying the close of the estate in order to accrue more interest (which was not alleged in this case) is an equitable matter which the Bankruptcy Court can consider prior to approving the Trustee's fee application.

■ With respect to Trustee's Counsel and Debtor's Counsel, the date of appointment is not an appropriate accrual date because they may not have performed services for the estate until long after their appointment. Once the professional files a fee application however, there is evidence of the work performed and thus, a cognizable claim. Therefore, a broad reading of the term "claim," causes this Court to find that the dates on which Trustee's Counsel and Debtor's Counsel filed their fee applications are the appropriate dates from which interest accrues. Because the Bankruptcy Court defers ruling on fee applications until the end of the case, denying interest on these administrative claims until the fees are awarded unduly penalizes the professionals, rendering § 726(a)(5) meaningless. Certainly, this is not what the drafters of the Bankruptcy Code intended.

### Limitation on Trustee Fees

■ UST also argues that § 326 of the Bankruptcy Code limits Trustee to a maximum compensation and by allowing interest to Trustee creates the potential for exceeding that limit. Section 326(a) provides:

(a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a).

In the present case, Trustee was awarded a fee based upon the non-surplus funds he disbursed. What UST is really concerned about is that the payment of interest to Trustee on his fee for the disbursement of the non-surplus funds will exceed the limits set by § 326(a). UST cites one case in which the court did not pay the trustee interest because doing so would exceed the § 326 limit. See In re Motley, 150 B.R. 16, 19 (Bankr.E.D.Va.1992). The Motley court found that it must strictly construe the limits of § 326(a) and therefore denied the payment of interest.

■ The Court disagrees with Motley and does not believe that § 326(a) operates to prevent the payment of interest on Trustee's fee. Sections 726(a)(5), 507 and 503(b) clearly encompass interest on trustee fees. Nowhere in those sections is it stated that the payment of interest is subject to the limitations of § 326(a). The Court also notes that

§ 326(a) should not always be strictly construed. *See In re Pancoastal, Inc.*, 104 B.R. 656, 658 (Bankr.D.Del.1989) (Exceptions should be made to the limits of § 326(a) where the equities so dictate). It would be incongruous to construe § 326(a) as limiting the payment of interest to Trustee when interest is clearly provided for by the Code.

### The Applicable Interest Rate

 UST contends that the Bankruptcy Court erred in calculating the interest by applying the federal judgment rate of interest in effect on the date of a conversion to Chapter 7, rather than the rate in effect on the date the petition was filed. A clear reading of Section 726(a)(5), UST argues, suggests that the interest rate is determined from the date of filing the petition, regardless of whether the case originated under another chapter of the Code. In support of this argument UST cites *In re Chiapetta*, 159 B.R. 152, 161 (Bankr.E.D.Pa.1993) and *In re Melenyzer*, 143 B.R. 829, 834 (Bankr. W.D.Tex.1992) as cases which applied the interest rate in effect on the date of filing. However, *Chiapetta* and *Melenyzer* are immaterial because they were not cases converted to Chapter 7, but rather were originally filed under Chapter 7.

The Court has found no cases which discuss this issue, but an examination of the Bankruptcy Code leads the Court to disagree with UST's argument. Section 726(a)(5) provides:

> (a) property of the estate shall be distributed—(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition....

11 U.S.C. § 726(a)(5). Section 103(b) of the Bankruptcy Code governs the applicability of the chapters under the Code and states:

> (b) Subchapters I and II of chapter 7 of this title apply only in a case under such chapter.

11 U.S.C. § 103(b). Section 726(a)(5) is included in subchapter II of the Bankruptcy Code and thus, only applies to cases under Chapter 7. Moreover, interest paid pursuant to § 726(a)(5) arises only in the context of a Chapter 7 case, not one under Chapters 11 or 13.

The Court does not believe that Congress intended for interest distributions in Chapter 7 cases to be calculated at a rate in effect before the case ever became one under Chapter 7. Because a claim for interest under § 726(a)(5) does not exist until the case becomes one under Chapter 7, it makes little sense to apply an interest rate which predates the conversion to Chapter 7.

Accordingly, upon due consideration, with respect to each point on appeal, the Court affirms. The Clerk is directed to enter judgment in accordance with Rule 8016, Fed. R.Bankr.P.

DONE AND ORDERED.