## In re DOMINO INVESTMENTS, LTD., a Cayman Islands Corporation, Alberto Duque a/k/a Alberto Duque Rodriguez, Debtors.

Bankruptcy Nos. 83–00902–BKC–TCB, 83–00903–BKC–TCB.

United States Bankruptcy Court, S.D. Florida.

Jan. 6, 1988.

Blackwell, Walker, Fascell & Hoehl, Patrick S. Scott, Ft. Lauderdale, Fla., for trustee Murphy (Duque and Domino).

Antonio Sanclemente Velasquez, Holguin Sanclemente Fernandez and Asociados, Bogota, Colombia, S.A., Jesus Bugeda Pineiro, Colonia Del Valle, Mexico, D.F., for trustee Duque.

Robert Buesing, Trenam, Simmons, Tampa, Fla., for appraiser.

John Paul Murphy, Coral Gables, Fla., Trustee.

## ORDER ON INTERIM FEE APPLICATIONS

THOMAS C. BRITTON, Chief Judge.

These two cases were filed almost five years ago under chapter 11. Nothing of significance happened in either until each was converted to chapter 7 on the unopposed motions of the creditors' committees. The Duque case was converted in May 1985 and Domino was converted five months later in October. The two committees were represented by the same law firm. That firm nominated the trustee, Murphy, and has since represented him.

Following conversion, very little was attempted or accomplished until April 1987. Duque's home, an apartment, and some personal property were sold by brokers. One adversary proceeding required Duque to release some foreign records, but his release of those records has yet to benefit either estate. The remaining activity involved discovery and the monitoring of proceedings in the bankruptcies of other entities which were controlled by Duque either directly or through his personal holding company, Domino.

In April 1987, to meet the statutory deadline, counsel filed 26 adversary complaints to avoid allegedly fraudulent or preferential transfers and in June 1987 filed one more. These cases were all either dismissed, settled or tried within a month or two in this court. Some remain pending on appeal. These two estates now consist of $2,972,769, 85% in the Duque estate. D & D Reports 29 and 30. This sum includes over $230,000 in accumulated interest.

There are 12 fee applications pending before me. They are tabulated at C.P. No. 355. The law firm's application as attor-

neys for the creditors' committee (C.P. No. 351) is a final application. The rest are interim applications by the firm, and by accountants, an auctioneer, an appraiser, a Colombian attorney and a Mexican attorney hired to assist the firm. Nine of the applications (68%) relate to the Duque case. The rest relate to the jointly administered Domino case.

The 12 applications, which do not include anything for the trustee, total $681,393, 23% of the present gross estate.

### Conclusion

■ The allowance of interim compensation though authorized, is not mandatory. 11 U.S.C. § 331. The trustee is authorized and directed to pay, as interim awards subject to review and reconsideration after the final meeting of creditors, the expense claims asserted in the presently pending applications which total $44,303. To the extent any are subsequently found to be excessive, the excess can be credited toward the final fee. For the reasons stated below, all remaining applications are denied without prejudice to their renewal and consideration at the final meeting of creditors when this case is closed.

### Discussion

■ There is no apparent reason why this case cannot be closed by March or April. Trustee's counsel has offered three reasons to protract the administration of this case. Status Report, pp. 36–42 (C.P. No. 364):

(1) *Appeals.* There are five appeals pending in district court from this court's judgments in the trustee's adversary proceedings, referred to above. Three of these are appeals by the trustee.

These appeals have now been pending about six months and the district court decisions should be available by March or April. It is probable that at least one will go to the Circuit, but there is no reason why final distribution and closing cannot be accomplished pending the disposition of these appeals. None of these appeals can *diminish* this estate.

Any additional recovery resulting from the appeals, either by affirmance and collection of this court's judgments or reversal of this court's rejection of the trustee's claims can be administered through a reopening of the case under § 350(b), at which time additional fees and costs could also be considered.

(2) *Possible Other Assets.* The trustee may elect to pursue Duque's South American interests and a judgment he obtained here against Duque's wife, who has returned to Colombia. The trustee says he and the trustee of another Duque entity bankruptcy *may* join forces to attempt recoveries in South America. The trustee has not found any assets owned by Duque's wife.

In the preceding five years, no creditor has been successful in recovering any South American assets in any of these related bankruptcies (or any other bankruptcy I am acquainted with). There is always a first time and I hope it will occur here, but I would not authorize this trustee to advance any part of this estate in further efforts in that direction. The trustee (or any creditor) will be authorized to attempt such a recovery on a contingent fee basis. This will provide a reasonable curb on the expense, which I cannot accomplish otherwise, of what is at best a long shot.

(3) *Claims Review.* The trustee delayed his challenge of the improper claims filed in these cases until November 1987. There is no reason why they could not have been challenged long ago. I have heard and decided all but one of these objections and hope to turn to the remaining one as soon as I can conclude this Order.

By withholding interim compensation, I intend to discourage further procrastination in the administration of this five-year-old case. It is my experience that there is no other effective way to do so. The soporific effect of interim compensation and the lure of continuing fees from a monied open estate almost invariably extends the administration of bankruptcy estates without providing offsetting benefits to the creditors.

The other applicants employed to assist the trustee's counsel will, I hope, add their voice to mine in encouraging counsel to complete its task without delay.

An accurate evaluation of the applications before me is possible only when *all final* applications are before the court and the results of the applicants' efforts can be assessed in the perspective of the entire case. It would take the better part of a week for me to review these 12 applications now and each would have to be reviewed again following the final meeting.

The denial of compensation at this time is, of course, without any reflection as to either the services furnished or the reasonableness of the compensation sought.