United States Court of Appeals,

Eleventh Circuit.

No. 95-2849.

In re GLADOS, INC., Debtor.

U.S. TRUSTEE, Plaintiff-Appellant,

v.

Jere M. FISHBACK and Lawrence S. Kleinfeld, Defendants-Appellees.

May 28, 1996.

Appeal from the United States District Court for the Middle District of Florida. (No. 93-2905-CIV-T-23), Harvey E. Schlesinger, Judge.

Before EDMONDSON and DUBINA, Circuit Judges, and LOGAN[*], Senior Circuit Judge.

DUBINA, Circuit Judge:

The United States Trustee ("UST")[1] appeals the district court's judgment affirming the bankruptcy court's judgment. The bankruptcy court held that pursuant to 11 U.S.C. § 726(a)(5), a trustee may receive interest on his or her compensation dating from the trustee's appointment and that professionals other than the trustee may receive interest on their fees dating from the submission of their fee applications. Because we disagree with both the bankruptcy court and the district court's conclusions, we reverse the district court's judgment.

---

[*]Honorable James K. Logan, Senior U.S. Circuit Judge for the Tenth Circuit, sitting by designation.

[1]The UST is an official of the United States Department of Justice charged by statute with the duty to oversee and supervise the administration of bankruptcy cases. 28 U.S.C. § 586(a). The UST is expressly given standing under 11 U.S.C. § 307 to raise and be heard on any issue under Title 11, except that the UST may not file a reorganization plan under Chapter 11.

## I. STATEMENT OF THE CASE

On September 30, 1983, Glados, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Code"). The case was converted to Chapter 7 with the bankruptcy court's approval on February 8, 1985. Lawrence S. Kleinfeld (the "Trustee") was appointed as interim Chapter 7 trustee. At the time, the Debtor had no assets other than two pending legal actions: (1) a claim in the United States District Court for the Middle District of Florida against the Debtor's insurance company to recover insurance proceeds resulting from the destruction of the Debtor's business by fire; and (2) a claim against the Debtor's former landlord for wrongful eviction. The Trustee was substituted as plaintiff in the pending lawsuits and sought to employ counsel. On September 9, 1985, the bankruptcy court approved the Trustee's application to employ the law firm of Kleinfeld & Fishback (hereinafter "Trustee's counsel") on a contingency fee basis. Following six years of litigation, the Trustee's counsel obtained favorable judgments in both lawsuits and thus secured substantial litigation proceeds for the estate. The insurance company appealed the judgment to this court and ultimately to the United States Supreme Court. The judgment was affirmed.

The Trustee's counsel filed a motion in the district court seeking an award of attorneys' fees. On June 6, 1986, the district court granted this motion and awarded the Trustee's counsel the sum of $79,200. On March 14, 1988, the Trustee's counsel filed a second motion for attorneys' fees for work performed at the

appellate level. On September 18, 1991, the Debtor's insurer paid the estate $129,402.12, which represented the trial level fees plus accrued post-judgment interest. The Trustee and the Debtor's insurer compromised on a fee for the appellate work in the sum of $80,000, and on January 23, 1992, the bankruptcy court approved this compromise.

Following the liquidation of the estate's assets, all secured and unsecured claims, including administrative expenses, were fully paid, and a surplus remained. On July 21, 1992, the Trustee filed a Preliminary Report of the Estate along with his application for compensation. The Trustee's counsel filed their fee application which included a request for the fees awarded in the insurance litigation in addition to fees for other work performed on behalf of the Trustee. The bankruptcy court then issued a Notice of Preliminary Report of Estate Funds and Notice of Surplus Funds to all creditors and parties in interest. This Notice advised all creditors of the availability of surplus funds to pay additional claims if filed. On September 29, 1992, the Debtor's counsel filed their fee application. However, on February 16, 1993, the bankruptcy court deferred ruling on the fee applications until it had determined whether the estate contained sufficient funds for the payment of fees.

On February 25, 1993, the bankruptcy court informed the Trustee of the allowed amounts of all administrative expenses.[2]

_____

[2]The bankruptcy court awarded the Trustee $8,927.25 in fees and $56.15 in expenses. The Trustee's counsel was awarded $227,612.12 in fees and $1,515.02 in expenses. The Trustee's counsel's compensation award consisted of $79,200 for the district court litigation as well as $50,202.12 in judgment

Using this information, which included the compensation awards for the Trustee and the Trustee's counsel as determined under § 330, the Trustee prepared a proposed order allowing administrative expenses, authorizing disbursements, and directing the payment of dividends. The proposed order provided that following the full payment of all claims, the estate would have surplus funds which would be used to pay interest on the fees of the Trustee, the Trustee's counsel, and the Debtor's counsel pursuant to § 726(a)(5). The UST objected to the proposed distribution solely based on the allocation of surplus funds for interest. Billy Ray Addison, the largest unsecured creditor, joined in the UST's objection.

Following a hearing on the UST's objection, the bankruptcy court entered an order on September 30, 1993. The bankruptcy court's order allowed administrative fees and expenses to the Trustee, the Trustee's counsel, and the Debtor's counsel. In addition, the order provided for the payment in full of all priority and unsecured claimants and allocated the remaining $77,711.82 of surplus funds as interest on the administrative fees and expenses. The bankruptcy court also concluded under § 726(a)(5) that interest on a trustee's fees accrues from the date that the trustee is appointed and that interest on a non-trustee professional's fees accrues from the date of the filing of the fee application. Moreover, the bankruptcy court held that if other litigation caused the professional to file a fee application with

interest on that award, $80,000 for the appellate work, and $18,210 for the balance of services provided by the Trustee's counsel.

another court, interest on those fees would accrue from the date the professional filed the fee application with the other court. The bankruptcy court advised using the federal judgment rate of interest in effect on the date the Chapter 7 case was filed or, if the case was originally filed under another chapter, the interest rate on the date of conversion to Chapter 7. Consequently, the bankruptcy court awarded the Trustee's counsel $73,400.68 in interest, the Trustee $4,008.42 in interest, and the Debtor's counsel $302.72 in interest. Such payments consumed the surplus. The UST appealed to the district court, which affirmed the bankruptcy court's order. The UST then perfected this appeal.

## II. ISSUES

We address the following issues on appeal:

1. whether a trustee may, pursuant to 11 U.S.C. § 726(a)(5), receive interest on his or her compensation in a case dating from the trustee's initial appointment; and

2. whether professionals other than the trustee may, pursuant to 11 U.S.C. § 726(a)(5), receive interest on their compensation dating from the professionals' submission of their fee applications.

## III. STANDARD OF REVIEW

Because the district court functions as an appellate court in reviewing bankruptcy court decisions, this court is the second appellate court to review bankruptcy court cases. *Haas v. Internal Revenue Service,* 31 F.3d 1081, 1083 (11th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 2578, 132 L.Ed.2d 828 (1995). This court reviews determinations of law, whether from the bankruptcy court or the district court, *de novo. Id.* We review the bankruptcy court's factual findings under the clearly erroneous standard of review. *Id.*

IV. DISCUSSION

This case is novel in that rarely will a Chapter 7 case result in assets that exceed the amount necessary to satisfy creditors and administrative expenses. In the event of a surplus, the Code allows for trustees and other professionals to receive interest on their fees. This case revolves around the issue of when such interest begins to accrue. The bankruptcy court and the district court found that the Trustee is entitled to interest from the date of his or her appointment and that the Trustee's counsel is entitled to interest from the date of the filing of a fee application. The UST argues that the Code and case law throughout the country allow interest on trustee and other professional fees to accrue only from the time of the court's fee award, and *not* from the time of the appointment or the submission of an application.

*A. Statutory Basis*

Section 726 of the Code establishes the distribution system governing a trustee's disbursement of funds at the close of a Chapter 7 case. Subsection (a) describes the general priorities of the different types of claims against the estate in paragraphs one through four. Paragraph five provides for the payment of interest on such claims. After all claims and any interest on such claims have been paid, any remaining funds are distributed to the debtor pursuant to paragraph six.

A complete understanding of interest paid pursuant to § 726(a)(5) necessarily involves a review of several additional sections of the bankruptcy code. Section 726(a)(5) provides:

> (a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), OR (4) of this subsection ...

Section 726(a)(5)'s reference to § 726(a)(1) results in a series of references to various sections of the Code. First, § 726(a)(1) provides:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, ...

Section 507 provides, in relevant part:

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28 ...

Section 503(b)(2) states:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(2) compensation and reimbursement awarded under section 330(a) of this title.

Consequently, claims for compensation or reimbursement of expenses are claims "of the kind specified in ... section 507" to the extent that such claims are for "compensation and reimbursement awarded under section 330(a)." Section 330(a) provides that after meeting notice requirements, "the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103 ... reasonable compensation for actual, necessary services rendered ... and reimbursement for actual, necessary expenses."

The problem with the district court's statutory analysis is that it ends with § 726(a)(5)'s "any claim paid," thereby ignoring

the phrase in section 503(b)(2) that reads "compensation and reimbursement awarded under section 330." Despite the long statutory progression, courts addressing the issue of trustee and professional interest on administrative expenses have faced a dilemma:

> Courts have recognized that administrative claims, including attorneys' fees pursuant to 11 U.S.C. § 330(a), are entitled to interest under § 726(a)(5) when there is a surplus in the estate.... But, while determining that administrative claims are entitled to interest, the courts have nevertheless been faced with a quandary. Specifically, the courts are required to pay interest under § 726(a)(5) "at the legal rate *from the date of the filing of the petition* on any claim paid under ... this subsection." However, professional compensation allowable under § 330(a) often does not arise as a claim until near or at the end of the case, when a court enters a fee award.

*In re Chiapetta,* 159 B.R. 152, 159 (Bankr.E.D.Penn.1993) (citations omitted). The appellees argue that the language of § 726(a)(5) clearly provides that interest should be paid from the time of the filing of the petition. However, the bankruptcy court and the district court disagreed with this proposition and so limited accrual to the time of appointment.[3] The conflict inherent in a literal reading of § 726(a)(5) is thoroughly explored in the case law from around the country.

*B. Case Law*

The bankruptcy court and the district court failed to consider sufficiently the existing case law. While the Eleventh Circuit has not specifically addressed the issue presented in this case, the

---

[3]The appellees have not filed any cross-appeals and in fact ask that the district court's judgment be affirmed in all respects. The appellees assert later in their brief that the bankruptcy court and district court's holding with respect to interest on professional fees was "a well-reasoned compromise." Appellees' Br. at 17.

Ninth Circuit addressed it in *Boldt v. Crake (In re Riverside-Linden Inv. Co.),* 945 F.2d 320 (9th Cir.1991). Multiple jurisdictions have followed the decision in *Riverside-Linden,* including Chief Bankruptcy Judge Paskay in *In re Brown,* 190 B.R. 689 (Bankr.M.D.Fla.1996).

In *Riverside-Linden,* the court addressed the issue of interest on trustee's counsel fees and held that professionals are entitled to interest on their fees from the time of the court's fee award and *not* from the time of appointment. *See Riverside-Linden,* 945 F.2d at 324. The Ninth Circuit noted that a literal reading of § 726(a)(5) without reference to the remainder of the Code would be illogical:

> For claims existing prior to the filing of the bankruptcy petition, a date-of-filing accrual date is appropriate and mandated under the plain language of the statute.... For a claim to Section 330(a) attorney's fees arising subsequent to filing, however, a literal application of the statute makes little sense; interest cannot accrue on fees for services which have not yet been performed. *See, e.g., Bob Jones Univ. v. United States,* 461 U.S. 574, 586, 103 S.Ct. 2017, 2025-2026, 76 L.Ed.2d 157 (1983) ("it is a well established canon of statutory construction that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute")....

*Id.* at 323-24 (citation and internal quotation omitted). The Ninth Circuit further concluded:

> The provision which defines attorney's fees as a compensable administrative expense, Section 503(b), refers to "compensation and reimbursement *awarded under section 330.*" ... It is not until the fees have been awarded by the bankruptcy court pursuant to Section 330, therefore, that they become an administrative expense entitling them to treatment as a claim under Section 726(a)(5).

*Id.* at 324.

*Riverside-Linden* has been consistently followed in subsequent decisions addressing interest on trustee and non-trustee

professional fees under § 726(a)(5).  *See, e.g., In re Chiapetta,* 159 B.R. 152, 159-60 (Bankr.E.D.Penn.1993) (neither trustee nor trustee's counsel entitled to interest until after the award of fees at the close of the case);  *In re Motley,* 150 B.R. 16, 18-20 (Bankr.E.D.Va.1992) (trustee not entitled to pre-award interest under § 726(a)(5));  *In re Commercial Consortium,* 135 B.R. 120, 127 (Bankr.C.D.Cal.1991) (trustee's counsel may not receive pre-award § 726(a)(5) interest, but the court may award current rates as compensation for delay).  Furthermore, courts have held that professionals employed on behalf of a bankruptcy estate are not entitled to compensation or interest on this compensation until the final fee awards are made under § 330.  *See In re Child World, Inc.,* 185 B.R. 14 (Bankr.S.D.N.Y.1995);  *In re Caribou Partnership III,* 152 B.R. 733 (Bankr.N.D.Ind.1993).

*Riverside-Linden* was favorably cited and followed by Chief Judge Paskay in *In re Brown,* in which the trustee sought to recover interest from the date of his appointment and the trustee's counsel sought interest from the date of his fee application. *See Brown,* 190 B.R. at 689.  Chief Judge Paskay noted that neither the bankruptcy court's decision in the present case (*Glados* ) nor its appeal decision (*Fishback* ) were published and are therefore not binding precedent. *Id.* at 690.  As Chief Judge Paskay stated, "In this Court's view, the District Court's analysis [in *Fishback* ] is an oversimplification of the law."  *Id.*  The Court noted the problems with a literal interpretation of § 726(a)(5):

> A literal interpretation of § 726(a)(5) produces uncontemplated results as to interest allowable to attorneys and trustees, whose administrative expenses arise subsequent to filing.  For instance, if the attorney for the trustee is

not employed until two years into the administration of the case it would, in effect, permit the attorney to earn interest on those fees when he did not perform any work. Equally, the trustee would be encouraged to delay the administration of the estate to allow the accrual of interest in a surplus case.

*Id.* at 691.

Chief Judge Paskay also explained that the award of interest to the trustee is contrary to the purpose of § 326(a), which sets limits on the amount of trustee compensation based on the total distribution made to creditors. *Id.* at 690. The bankruptcy court noted that there is no mention of the accrual of interest in § 326(a). *Id.* In *In re Motley,* 150 B.R. 16, 20 (Bankr.E.D.Va.1992), the bankruptcy court determined that interest was inappropriate pursuant to the reasoning of *Riverside-Linden* and concluded that the inconsistency between § 326(a) and § 726(a)(5) constitutes an additional ground for denying interest to the trustee:

It appears to this Court that the formula fixing the § 326(a) compensation for [the] trustee actually provides for the trustee to benefit from interest earned without a court award of fees. Section 326(a) calculates a trustee's fee based on the distribution to creditors. Assets remaining in the estate after payment of all claims allow for the payment of interest in those claims under § 726(a)(5). If the trustee pays § 726(a)(5) interest on claims, ... the trustee earns a fee on the interest paid on creditors' claims by virtue of the fee formula of § 326(a). Then allowing [trustee] Ames' claim for interest on the fees provided by § 326(a) would amount to two bites of the apple and would result in a disincentive for trustees to distribute assets in a timely manner. Under [trustee] Ames['] reading of the Code and cases, a trustee could delay final distribution, as was done in this six-year-old case, allow the interest earned on assets converted to cash to accumulate in escrow, earn a fee on the distribution of those assets (which now include earned interest) in satisfaction of claims, and as a part of his compensation petition for interest on his fee under § 726(a)(5). In contrast to Ames' illogical, unjust, and capricious scheme, the Code fairly provides for the trustee to benefit from a commission earned from the payment of interest

on claims of creditors.[4]

*Id.* The purpose of a Chapter 7 case is to efficiently administer the liquidation of the estate for the benefit of the creditors. Providing an incentive for the trustee to delay the conclusion of the case would thus be counterproductive.

The district court concluded that the Trustee's counsel could collect interest on their fees from the date of the filing of a fee application, because once the application is filed, there is evidence of work performed thus giving rise to a claim. District Court Order at 12. Arguing that *Riverside-Linden* and the UST construe the term "claim" too narrowly, the district court cited our opinion in *In re St. Laurent,* 991 F.2d 672 (11th Cir.1993) in support of the proposition that the term "claim" should be interpreted as broadly as possible. However, we conclude based on the statutory analysis, case law, and common sense, that attorneys' fees are not entitled to treatment as compensable claims until compensation is awarded under § 330(a). *See* 11 U.S.C. § 503(b)(2); *Riverside-Linden,* 945 F.2d at 324; *In re Brown,* 190 B.R. at 691; *Huisinga v. Craig & Nichols (In re Byrd),* 151 B.R. 925 (D.S.D.1993) (denial of pre-award interest to debtor's counsel); *In re Chiapetta,* 159 B.R. at 159-60; *In re Caribou Partnership III,* 152 B.R. at 740-41 (denying debtor's counsel pre-award interest); *In re Commercial Consortium,* 135 B.R. at 127.

---

[4]The appellees argue that *Motley* is distinguishable from the present case because the *Motley* court was influenced by the fact that no interim fee applications were filed. In the Middle District of Florida no interim fee applications are entertained in Chapter 7 cases. We will discuss the effect of the Middle District of Florida's practice regarding interim fee applications *infra.*

Admittedly, plain language is preferable in statutory construction, but as this court has held: "Rules of statutory construction dictate that the plain meaning is conclusive, "except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intent of its drafters.' " *In re Colortex Industries, Inc.,* 19 F.3d 1371, 1375 (11th Cir.1994) (quoting *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989)) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). Allowing interest to accrue prior to actual awards is contrary to the remainder of the statutory scheme, as well as to the case law interpreting it. Consequently, we hold that the bankruptcy court and the district court incorrectly concluded that trustees should be awarded interest from the date of appointment and other professionals from the date of submission of their fee applications. Moreover, we are persuaded by Chief Judge Paskay's published opinion in *Brown,* which expressly rejects the bankruptcy court and the district court's unpublished conclusions.

## C. Availability of Interim Fees and the Peculiarity of the Middle District's Custom

The appellees urge us to consider the policy argument that out of fairness they should receive interest in order to compensate for the delay that results from the Middle District of Florida's policy of refusing to entertain interim fee applications until the close of the case, despite the fact that such fees are provided for in § 331. Both the bankruptcy court and the district court relied upon this policy justification in their decisions to allow for

interest to accrue contrary to the Code and existing case law. Nevertheless, we will not ignore statutory provisions and case law, as well as common sense, simply because of procedural peculiarities in the Middle District of Florida.

The district court's opinion proposed to distinguish the prior case law under § 726(a)(5) on the basis that in those other jurisdictions interim compensation was available. However, as the UST points out, the important component of the *Riverside-Linden* decision is the statutory analysis of § 726(a)(5) and related sections. Another important distinction is that although the professional in *Riverside-Linden* had not filed an interim fee application, later cases citing *Riverside-Linden* or its progeny and stressing the availability of interim compensation are generally Chapter 11 cases. *See Byrd,* 151 B.R. at 926 (debtor's counsel's fees); *Caribou Partnership III,* 152 B.R. at 735 (debtor's counsel's fees). Chapter 7 cases involve situations quite different from those arising under Chapter 11 cases. In a Chapter 7 case there is generally no operating business from which ongoing expenses can be paid. As a result, most Chapter 7 cases do not possess sufficient funds from which to pay interim compensation until the end of the case when all the assets of the insolvent debtor have been collected and liquidated and all litigation has been completed. Because the objective of Chapter 7 is the expeditious administration of the estate, courts have been indisposed to award interim fees for fear that awarding such fees would provide the trustee with an incentive to prolong the administration of the estate. *See In re Domino Investments, Ltd.,*

82 B.R. 608, 609 (Bankr.S.D.Fla.1988) (denying interim compensation in order to encourage timely administration of the estate).

Pursuant to § 331, trustees and other professionals in Chapter 7 cases are allowed to file applications for interim fee awards. Notwithstanding this fact, in Chapter 7 cases many bankruptcy courts are reluctant to consider such applications until the close of the case because of the permissive language of § 331 and the policy justification of efficiently conducting the close of the estate. *See generally Commercial Consortium,* 135 B.R. at 120; *Domino Investments,* 82 B.R. at 609. The Middle District of Florida does not consider interim fee applications in Chapter 7 cases because it does not have sufficient time due to its heavy case load.[5]

In *Commercial Consortium,* concluding that § 331 does not exclude Chapter 7 cases from the discussion of interim fees, the court held that bankruptcy courts should entertain interim fee applications from professionals in Chapter 7 cases. *Commercial Consortium,* 135 B.R. at 124. In doing so, the court rejected the policy argument that requiring counsel to wait until completion of

_____

[5]The bankruptcy court stated:

> It is the practice of this Court to defer ruling on professional fee applications until the closing of the case in order to assist the Court in the administration of its large case load. If the Court were to follow the position asserted by the United States Trustee, professionals would never receive interest on their administrative expense claims and professionals would be unduly prejudiced because of this Court's inability to promptly rule on fee applications when they are filed.

Bankruptcy Court's Order at 7.

the case will encourage a more rapid closing. *Id.* The court reasoned that this policy justification was not adequately supported by its underlying necessary assumptions that counsel can control the speed of the closing of a Chapter 7 case and that the administration of Chapter 7 cases can usually be completed quickly enough to make interim compensation unnecessary. *Id.* The court acknowledged that the appropriateness of interim fees is dependent upon such factors as the current availability of funds, the existence of other accrued administrative obligations of the same or higher priority that may deplete the funds, the continuing need for funds to pay necessary administrative expenses in the future, and the inability to file a final fee application in the near future. *Id.* at 124-25. The court also placed the burden on the professional seeking payment to present sufficient evidence to persuade the court that such fees should be disbursed. *Id.* at 125.

The appellees argue that because the bankruptcy courts in the Middle District of Florida do not consider interim fee applications in Chapter 7 cases, they should be entitled to interest to compensate them for the delay.[6] Unlike the situation in *In re Commercial Consortium,* however, we are not directly presented here with the issue of failure to consider interim fee applications. Consequently, we decline to require the Middle District of Florida to entertain such applications. Moreover, in holding that trustees and trustee's counsel are entitled to interest accruing only from the date of the award, we decline to express an opinion on the

[6]One method of compensating for delay is the use of current rather than historical rates in determining fee amounts. *See Commercial Consortium,* 135 B.R. at 126-127.

Middle District's practice of refusing to review interim fee applications.

## V. CONCLUSION

For the foregoing reasons, we reverse the district court's judgment affirming the bankruptcy court's judgment and remand this case for further proceedings consistent with this opinion.

REVERSED and REMANDED.