In re Willadeen REED, Debtor.

Max R. Tarbox, Chapter 7
Trustee, Appellant,

v.

United States Trustee for the Northern
District of Texas, Appellee.

Bankruptcy No. 99–50598–RLJ–7.
No. CIV.A. 5:03–CV–188–C.

United States District Court,
N.D. Texas,
Lubbock Division.

Feb. 9, 2004.

William S. Parkinson, U.S. Department of Justice, Office of Trustee, Dallas, TX, for U.S. Trustee for the Northern District of Texas.

Max R. Tarbox, Tarbox & Miller, Lubbock, TX, pro se.

## ORDER

CUMMINGS, District Judge.

BEFORE THIS COURT FOR CONSIDERATION is the appeal of MAX R. TARBOX ("Trustee"), Chapter 7 Trustee for the bankruptcy estate of WILLADEEN REED, Debtor, from an order in a bankruptcy proceeding in the Bankruptcy Court for the Northern District of Texas, Lubbock Division, in the above-referenced case. The Court, having carefully considered the brief of Appellant, filed on August 29, 2003, the brief of the United States Trustee ("UST"), filed on September 17, 2003, and the record in this case, is of the opinion that the decision of the bankruptcy court should be affirmed. There is no reversible error in the conclusions of law.

It is, accordingly, ordered that the decision of the bankruptcy court is, in all things, **AFFIRMED.**

## I.

### JURISDICTION

This is an appeal from a final order in a bankruptcy proceeding in the Bankruptcy Court for the Northern District of Texas, Lubbock Division. A timely notice of appeal was filed on June 23, 2003, under Bankruptcy Rules 8001(a) and 8002(a). This Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a).

## II.

### STANDARD OF REVIEW

In an appeal from a bankruptcy proceeding, questions of law are subject to *de novo* review by the district court. *In re Hinsley,* 201 F.3d 638, 642 (5th Cir.2000). When examining provisions of the Bankruptcy Code, appellate courts are instructed to begin with a construction of the statute's language. *CompuAdd Corp. v. Tex. Instruments, Inc. (In re CompuAdd Corp.),* 137 F.3d 880, 882 (5th Cir.1998). "In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue, judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 475, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992). Absent an express, contrary definition of a certain term in the Bankruptcy Code, "Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), cited in *Boyce v. Greenway (In re Greenway),* 71 F.3d 1177, 1179 (5th Cir.1996) (internal quotations and citations omitted). As a part of that analysis, however, the United States Supreme Court cautioned that "we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *In re CompuAdd,* 137 F.3d at 882 (citations omitted). As a result, "[t]he plain meaning of legislation should be conclusive, except in the rare

cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (alterations in original) (internal quotations omitted).

## III.

### BACKGROUND

Debtor, Willadeen Reed, filed her petition for relief under Chapter 7 of the Bankruptcy Code on May 14, 1999. Max R. Tarbox was subsequently appointed Trustee of the bankruptcy estate. In one of those rare occurrences under the bankruptcy laws, this turned out to be a surplus case in which, after distribution of funds from the estate in payment of creditors, there remained $10,702.47 for distribution to the Debtor. The Trustee's Application for Compensation and Report of Proposed Distribution (the "Final Report"), filed on December 27, 2002, proposed to pay interest on administrative claims from the date of the filing of the petition, arguing that such is required in surplus cases by § 726(a)(5).[1] The UST objected to the Trustee's Final Report on January 6, 2003, arguing that accruing interest from the date of petition permits payment of money from the estate for a claim during a time period when no claim in fact existed. The UST argued that interest should accrue from the date the bankruptcy court awards compensation to the trustee. The bankruptcy judge, in an opinion filed on May 16, 2003, followed a third path that reads the relevant statute as denying interest on administrative fees and expenses *in toto*, determining that they are not within the provision for interest on claims allowed by § 726(a)(5).

## IV.

### ANALYSIS

■ This case involves statutory construction of 11 U.S.C. § 726(a)(5), and the courts that have attempted to interpret it are like Homer's Odysseus, attempting to navigate between Scylla and Charybdis.[2] To the one side stands visible and distinct the plain meaning of the statute, offering the certainty of a strict application that nevertheless, because of its hard and unforgiving character, can often yield inequitable results. To the other side opens the wide and inviting gulf of judicial interpretation that seemingly offers more room for maneuvering yet hides a bottomless vortex that can envelop a court which too easily veers into substituting its own understanding of congressional intent for the plain meaning of the language as written. The course charted by these courts has seemed to tack in the direction of one or the other, foundering on the inequities or sinking into the uncertainties.

This Court begins its analysis, as it must, with the statute. Section 726(a)(5) provides in a surplus case for "payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1)...." 11 U.S.C. § 726(a)(5) (2002). Paragraph (1) includes "claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or tardily filed before the date on which the trustee commences distribution under this section." § 726(a)(1).

1. Specifically, the Final Report claimed interest in the amount of $295.55 on Trustee's fees; $20.01 on Trustee's expenses; $92.59 on Trustee's attorney's fees; $3.74 on Trustee's attorney's expenses; $51.47 on Trustee's accountant's fees, for a total of $463.36 in interest.

2. The Odyssey, Book XII.

Among the claims specified in section 507 are "administrative expenses allowed under section 503(b) of this title...." § 507(a)(1). Continuing to follow the statutory thread, § 503(b) allows administrative expenses for "compensation and reimbursement awarded under § 330(a) of this title." § 503(b)(2). Turning to § 330(a), one finds that "the court may award to a trustee, an examiner, a professional person ... reasonable compensation for actual, necessary services rendered ... and reimbursement for actual, necessary expenses." § 330(a)(1)(A)-(B). Finally, an award under § 330(a) is subject to a limitation provided by § 326, which caps the trustee's compensation by means of a percentage formula applied to the amounts disbursed to the estate's claimants, exclusive of the debtor. § 326(a).

As the bankruptcy court below noted in its opinion, most courts that have addressed the issue of administrative claims in a surplus case have agreed that interest on such claims is payable under § 726(a)(5), but are in disagreement over whether such interest begins to accrue as of the date of the trustee's award for fees and expenses, or, as the language of the statute plainly states, "from the date of the filing of the petition." *Compare, e.g., U.S. Trustee v. Fishback (In re Glados, Inc.)*, 83 F.3d 1360 (11th Cir.1996); *Boldt v. Crake (In re Riverside–Linden Inv. Co.)*, 945 F.2d 320 (9th Cir.1991) (holding that interest accrues from the date of the award of trustee fees and expenses), *with, e.g., In re Smith*, 267 B.R. 770 (Bankr. W.D.Tex.2001); *In re Vogt*, 250 B.R. 250 (Bankr.M.D.La.2000) (holding that interest accrues from the date of the petition).

Courts in the Fifth Circuit, including the *Smith* and *Vogt* courts and the bankruptcy court below, have favored the plain meaning and strict application rule that, although a minority view, is nevertheless favored by this Court in principle and in practice. Nevertheless, implementation of the plain meaning rule for statutory construction has yielded two entirely inconsistent results. As noted, the *Smith* and *Vogt* courts' interpretation of the plain language allows for interest on administrative fees and expenses from the date of the petition. However, according to the court below, the plain meaning of the statute denies interest for any administrative fees or expenses whatsoever.

The inconsistency results, as this Court sees it, from a lacuna in the *Smith* and *Vogt* courts' analysis of the progression in the statutory thread involved in identifying the plain meaning of § 726(a).[3] Both courts begin with the provision in § 726(a)(5) for interest "from the date of the filing of the petition, on any claim paid under paragraph (1)." From there, the analysis proceeds to paragraph (1) as directed, concluding that, since paragraph (1) allows claims of the kind specified in § 507, and since § 507 includes administrative expenses under § 503(b) (among other claims), therefore administrative expenses are permitted to accrue interest from the date the petition is filed. *See Vogt*, 250 B.R. at 266; *Smith*, 267 B.R. at 772. In the view of the *Vogt* court, this analytical progression fully reveals "[t]he only pre-condition to qualification as a claim entitled to be paid interest from the petition date...." *Vogt*, 250 B.R. at 266.

---

**3.** Judge Phillips, the author of the *Vogt* opinion, is an experienced bankruptcy judge, as the Fifth Circuit has noted in *In re Van Gerpen*, 267 F.3d 453, 456 (5th Cir.2001). This Court is reluctant to suggest that anything could be lacking in Judge Phillips' lengthy consideration of § 726(a), but this Court is compelled by the canons of statutory construction to give significance to every clause, and thus must address the implications of the reference to § 501 within the statutory thread.

In the analysis of the *Smith* court, there are no other "limitations or exceptions carved out in the statute with respect to this interest payment, and the language of the statute is both straightforward and plain.... The trustee's commission and expense claims are two of the allowed claims that are satisfied with a distribution of estate assets, pursuant to section 726(a)(1)." *Smith*, 267 B.R. at 772.

Although the opinions of both the *Vogt* and *Smith* courts follow the thread of the statute's plain language, the premature abandonment of that task in both instances yields a result this Court finds unpalatable, namely, that interest is accrued on the trustee's administrative fees and expenses from the date of the filing of the petition, even though the services and expenditures meriting such fees and expenses occur post-petition, often even years after the filing of the petition. The *Smith* court seems untroubled at all by such a result. But the *Vogt* court, like Odysseus following Circe's advice, finds that navigating close to the certainty of plain meaning is preferable to the total oblivion of being swept into the swirling uncertainty of judicial interpretation, even if that course results in an inevitable and inequitable loss to the surplus available to the debtor by paying interest on services before they are even rendered.[4] In the *Vogt* court's words, "[t]he answer to the problem lies ... in a wider read of the statute," and supplies a

reading that admittedly softens the inequity of the result somewhat.[5] *Vogt*, 250 B.R. at 282. That court interprets the language as reserving interest only for the trustee's administrative fees, and then only for those fees submitted through the final report process, and not to interim trustee fee requests brought under § 503(b) or to other professional fees submitted under § 330(a). *Id.* at 282–84.

The *Vogt* court recognizes that "[t]he more difficult problem ... albeit not one that shakes us, is that of reimbursement of trustee expenses ... [where] it is possible, if not probable, that a trustee may earn interest on an expense claim for a period of time before the actual expenses were incurred." *Id.* at 285. While noting that "the effect of interest accruing from the petition date upon a trustee expense reimbursement claim probably does require that interest accrue in a way that applicable non-bankruptcy law probably doesn't provide," the *Vogt* court nevertheless finds such a result required by the plain language of the statute. *Id.* at 292. But again, the *Vogt* court finds solace in this inequitable loss to the surplus available to the debtor by opining that Congress clearly must have intended "to provide an easily calculable interest overlay upon all claims prior to distribution to the debtor, [that] would be thwarted if the trustee would have to accrue interest on the expense

---

**4.** The goddess Circe instructed Odysseus, "Ah, shun the horrid gulf! by Scylla fly. 'Tis better six to lose, than all to die," referring to the cliff-dwelling, six-headed monster who could snatch a sailor in each of her mouths.

**5.** The *Vogt* court justifies the remaining possible inequities of accruing interest from the date of filing of the petition on post-petition trustee fees, as is necessary under its "wider reading," by reasoning that the trustee's post-petition claims are unique in view of the "role of the trustee and the trustee's responsibility to the estate" from the very moment of its

creation. *Id.* at 284. Such a result leads to "no illogic, absurdity, [or] capriciousness ... in providing for interest from the petition date upon a compensation claim that *in fact* ... exists from the petition date because it is grounded in and limited by the estate ... itself." *Id.* at 285 (emphasis in original). And, in fact, this Court would find justification in that reasoning, were not a still "wider reading" of the plain language possible that removes all inequities, as set forth by the bankruptcy court below.

claim from the date of the incurrence of each expense. There can be no question but that the cost of such a calculation would exceed the . . . interest incurred" in most instances. *Id.* at 293.

Not content to justify the inequity solely by reference to what it surmises was Congress' intent to provide for easy calculations and cost-effective assessments of interest, the *Vogt* court goes on to make an *a fortiori* argument based on *Griffin v. Oceanic Contractors, Inc.*, a Supreme Court case involving the assessment of a penalty for withholding of a seaman's wages. In *Griffin*, the Supreme Court reversed the appellate court's determination that the trial court had not abused its discretion when it refused to assess a penalty in excess of $300,000.00, as required by construction of a statute's plain language, for failure to pay wages in the amount of $412.50, even though the seaman was able to find gainful re-employment within five weeks. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982). In the view of the *Vogt* court, if an award of such magnitude, not at all warranted by the equities of the case, is found proper by the Supreme Court based on a literal application of the plain meaning and language of the relevant statute, then there is no justification for not applying the bankruptcy statute as written. Such references to the equities and "common sense of the non-bankruptcy world[,]" even though it "makes non-bankruptcy sense[,] . . . is irrelevant to a question of Congressional power. If Congress intends for interest to accrue though services had not yet been performed, it certainly has the power to enact such legislation if the legislation is not otherwise constitutionally impermissible. If Congress says it does, it does." *Vogt*, 250 B.R. at 287 n. 89. While not attempting to gainsay the *Vogt* court's assertions regarding congressional power,

this Court simply notes that the statute involved in *Griffin* was "not exclusively compensatory, but designed to prevent, by coercive effect, arbitrary refusals to pay wages, and to induce prompt payment when payment is possible. Thus, although the sure purpose of the statute is remedial, Congress has chosen to secure that purpose through the use of potentially punitive sanctions designed to deter negligent or arbitrary delays in payment." *Griffin*, 458 U.S. at 572, 102 S.Ct. 3245, 3250.

Analogies to court decisions implementing the punitive intent of congressional legislation where the language is plain, no matter how severe, are not entirely *apropos* the bankruptcy setting, in which "courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity." *Local Loan Co. v. Hunt*, 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934). This Court is mindful that the Bankruptcy Code controls the Court's equitable discretion and that it must not "use equity to contradict statutory or common law in order to reach what the court feels is a fairer result." *In re Offshore Diving & Salvaging, Inc.*, 1999 WL 961763, *2 (E.D.La. Oct.20, 1999); *see also In re Oxford Management, Inc.*, 4 F.3d 1329, 1334 (5th Cir.1993) (equitable powers under § 105(a) must be "exercised in a manner that is consistent with the Bankruptcy Code"). That said, the Court recognizes that the Bankruptcy Code "is designed to achieve two equally important objectives. The first is to provide honest debtors who have fallen on hard times the opportunity for a fresh start in life . . . . [and][t]he second . . . is to protect creditors in general." H.R.Rep. No. 103–835, 103d Cong., 2d Session (1994), reprinted in 1994 U.S. CODE CONG. & ADMIN. NEWS (U.S.C.C.A.N.) 3340, 3341. This Court can not, without further consideration, just shrug its shoulders at a puta-

tive statutory result that it would find abhorrent in equity, just because that result is merely to the debtor's detriment. Consequently, this Court will not be satisfied with a plain-meaning-of-the-language construction that yields an inequitable result, until it is convinced no equitable construction of that same language is possible.

 In charting a course through the language of § 726(a), this Court takes to heart the Supreme Court's instruction that "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Crooks v. Harrelson,* 282 U.S. 55, 60, 51 S.Ct. 49, 50, 75 L.Ed. 156 (1930). Further, this Court is also mindful of the canon of statutory construction that makes it the court's duty "to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker,* 533 U.S. 167, 174, 121 S.Ct. 2120, 2125, 150 L.Ed.2d 251 (2001); *see also Williams v. Taylor,* 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (describing this canon as a "cardinal principle of statutory construction"); *Market Co. v. Hoffman,* 101 U.S. 112, 115, 25 L.Ed. 782 (1879) ("As early as in Bacon's Abridgment, sect. 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no

clause, sentence, or word shall be superfluous, void, or insignificant'"). This Court, accordingly, will be "reluctan[t] to treat statutory terms as surplusage in any setting." *Duncan,* 533 U.S. at 174, 121 S.Ct. at 2125 (internal quotations omitted).

The course that navigates an alternative interpretation consistent with the legislative purpose while avoiding an inequitable consequence to the debtor has been outlined by the bankruptcy court in its opinion below. *See In re Reed,* 293 B.R. 698 (Bankr.N.D.Tex.2003). To that court's credit, its analysis of the statutory thread spun by § 726(a) gives effect, as it should, to a clause that is simply not discussed by either the *Vogt* or *Smith* courts. As the bankruptcy court below notes, under § 726(a)(5) interest is to be paid from the date of filing on any claim paid under paragraphs (1) through (4) of § 726(a), and "[p]aragraph (a)(1) refers to payment of section 507 claims, 'proof of which is timely filed under section 501.'" *Id.* at 699 (italics in original). Although that court recognizes that § 507, dealing with priority of claims, draws within its compass both those claims for administrative expenses allowed under § 503(b),[6] and also the claims of unsecured creditors,[7] the court does not prematurely halt its analysis there.[8] The bankruptcy court concludes

---

6. See paragraph (a)(1) of § 507.

7. See paragraphs (a)(2)-(8) of § 507.

8. Likewise, it does not veer off onto the course taken by the court in *In re Motley,* under which interest is applicable only to claims under § 507(a)(2)-(8), and not to administrative expenses under § 507(a)(1). The statutory analysis offered by *Motley* determined that (a), because § 726(a)(5) allows payment of interest on any claim paid under § 726(a)(1), and (b), because § 726(a)(1) allows distribution of property to pay claims of the kind specified in § 507, but makes no mention of payment of expenses of the kind specified in § 507, therefore (c), those admin-

istrative expenses provided for under § 507(a)(1) are not authorized for distribution of property of the estate for the payment of administrative expenses, much less for the payment of interest on those expenses. *See In re Motley,* 150 B.R. 16, 20 (Bankr.E.D.Va. 1992). As the *Vogt* court, which severely criticizes this approach, *see Vogt,* 250 B.R. at 268–70, so this Court does not find this argument persuasive. The question for this Court is not whether administrative expenses fit the definition of "claims"—surely they are "claims" as that term is defined by the Code itself at § 101(5)(a)—but whether they are within that narrower sub-group of claims specifically described and intended by

that the general, inclusive reference to § 507 is limited by the clause referring to § 501, and in doing so, it refuses to treat that clause as surplusage.[9] *Id.* at 701.

Adding § 501 to the statutory thread to be followed and including it in the bankruptcy court's analysis (the lacuna evident in the *Vogt* and *Smith* opinions) reveals that § 501 addresses the filing of proofs of claims by creditors and proofs of interests by equity security holders. § 501(a). Applying the Code's definition in § 101(10) of a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor," the bankruptcy court below concluded that the trustee and other professionals employed by the trustee do not constitute claim-filing creditors since their claims for administrative fees and expenses necessarily did not arise at the time of or before the order for relief concerning the debtor. *Id.* Although § 726(a)(1) at first seems to include them by its reference to claims of the kind specified in § 507, they are winnowed out by the reference to § 501, because they are not of the kind proof of which is timely filed under § 501 for pre-petition claims by creditors. No reference is made to claims which are filed under § 503, which would draw in other claims specified in § 507 for post-petition administrative expenses. Therefore, the trustee and the other professionals he hired were not holders of claims of the kind intended to be paid under § 726(a)(1), and as a result, their claims could not be claims on which interest is paid under § 726(a)(5). *Id.* The holding of the bankruptcy court below that payments of interest on the trustee's administrative fees and expenses are not allowed under § 726(a)(5) is affirmed.

While this Court realizes that the implication of this reading of the statutory language is that no administrative fees or expenses are eligible for interest under § 726(a)(5), it does not find this result any more troubling than a reading which allows for interest to accrue on services before they are rendered or expenses before they are incurred. Although this holding is based on a construction of the plain meaning of the statute's language, and not on any surmise regarding congressional intent, this Court can think of no compelling reason to suppose that the intent of Congress was otherwise. As the bankruptcy court below notes, adequate provision is made within the rest of the Code for payment of the trustee's administrative fees and expenses: regular payments of the trustee's and other administrative fees and expenses are approved and regulated by § 330 and capped by § 326 of the Code; their priority is established by § 507; and their payment is authorized by § 503(a). *Id.* These sections seem to completely address all pertinent aspects of the trustee's claims for administrative expenses, and all these provisions for procedures and priority are established completely independent of the final distribution. There is no reason to suspect that a further rule concerning these disbursements of administrative expenses would be buried within a section concerned with the procedures and priorities for the final distribution of the property of the estate to unsecured creditors.[10] As the Fifth Circuit has noted, these kinds of "disbursement[s] of estate funds to pay administra-

§ 726(a)(1), subject to its references to §§ 507 and 501.

**9.** This clause was added in the 1994 Amendments to the Bankruptcy Code. This Court can find nothing in the legislative history indicating why it was added.

**10.** The Senate Report on the Bankruptcy Reform Act of 1978, commenting on § 726, notes that "Paragraph [a](5) provides that postpetition interest on prepetition claims is also to be paid to the creditor in a subordinated position. Like prepetition penalties, such

tive expenses incurred by the trustee in the process of converting estate assets to cash" are "markedly different" from "distribution, as [that term] is used in the context of ... bankruptcy law." *Van Gerpen*, 267 F.3d at 456. Their priority is already clearly established ahead of those claims by unsecured creditors, for the simple reason that "creditors must pay for those expenses necessary to produce the distribution to which they are entitled." *In re H.L.S. Energy Co., Inc.*, 151 F.3d 434, 437 (5th Cir.1998). There is ample reason for this Court to determine, if it needed to, that Congress neither needed nor intended to include any provisions for the trustee's expenses, or for interest on those expenses, within the provisions of § 726(a).[11]

Further, § 331 allows the trustee to apply to the court at least every 120 days for allowance and disbursement of interim compensation, and sooner with the court's permission. 11 U.S.C. § 331. The trustee does not have to wait until the final distribution to receive payment for these administrative fees and expenses.[12] The fact that he is allowed to do so under a reasonable schedule does not suggest to this Court that Congress either felt compelled to or intended to provide for interest for those claims, especially within the section

dealing with final distributions to unsecured creditors.

## V.

### *CONCLUSION*

For the foregoing reasons, the holding of the bankruptcy court below that payments of interest on the trustee's administrative fees and expenses are not allowed under § 726(a)(5) is affirmed.

---

interest will be paid from the estate only if and to the extent that a surplus of assets would otherwise remain for return to the debtor at the close of the case." S. Rep. 95–989, 95th Cong., 2d Session (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5883. The clearly stated intent is to provide for interest on prepetition claims of creditors in a subordinated position, with no mention whatsoever of postpetition claims or non-creditor claims, which those of the trustee must necessarily be.

11. As the Court has previously noted, part of the confusion derives from the reference in § 726(a)(1) to claims of the kind specified in § 507, without paying proper attention to its further reference to proof of those claims under § 501. Section 507 establishes the pri-

ority of various claims, among which are administrative claims, which have a priority over claims of unsecured creditors. The reference to § 507 in § 726(a)(1) does not, by itself, bring within the ambit of the final distribution those claims for administrative fees and expenses, especially in light of the circumscription of that reference by the further reference to § 501, which has nothing to do with administrative fees and expenses.

12. Even Judge Phillips recognizes that "while payments made on account of compensation and administrative expense applications must be accounted for, it is not necessary that they be claims paid within the final distribution." *Vogt*, 250 B.R. at 282.